

FILED
JAN 19 2011
CLERK'S OFFICE
BAY CITY

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICHAEL FILIPIAK #598311,

        Petitioner,                  Case No. 2:09-cv-10776

v.                                     Honorable R. Allan Edgar

PERCY CONERLY,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving concurrent sentences of fifty-one months to twenty years and fifty-one months to fifteen years, imposed by the Oakland County Circuit Court on May 11, 2006, after a jury convicted petitioner of first-degree home invasion and third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.110a(2) and 750.520d(1)(c). In his *pro se* petition, petitioner raises four grounds for relief, as follows:

> I. Admission of evidence that petitioner loosened the lug nuts on the wheels of the vehicle was inadmissible under MRE 404(b) and denied petitioner due process.
>
> II. The prosecutor committed misconduct by asserting that petitioner raped his ex-wife, and the trial court erred in failing to allow the ex-wife to testify at trial.
>
> III. Petitioner was denied the effective assistance of trial counsel where his counsel: (a) failed to adequately challenge the prosecutor's assertion that petitioner raped his ex-wife, and (b) failed to challenge the amendment to the information increasing one charge from larceny to first-degree home invasion.

> IV. Petitioner was denied fair notice where the prosecutor was allowed, after the close of proofs, to increase the time-frame in which the criminal sexual conduct occurred by one month.

Respondent has filed an answer to the petition (docket # 8), stating that the grounds should be denied because they are noncognizable state law claims which have no merit. Upon review and applying the AEDPA standards, I find that grounds one, part of three and four are without merit, and grounds two and part of three are procedurally barred. Accordingly, the petition must be denied.

The state prosecution arose from an arrest of petitioner on June 15, 2005. Petitioner had known the victim in high school, and they met again 20 years later in 1999. They went on one date, but the victim indicated that she was not interested in a romantic relationship with petitioner. During the Summer of 2000, the victim needed a place to stay, and petitioner rented her a room at his residence. The victim stayed at petitioner's home for six months, and she dated other people during this time. At the end of her stay, petitioner began trying to enter the victim's bedroom when it was locked and would breathe heavily at the door. After she moved, the victim and petitioner remained friends. However, when she began dating someone else, petitioner began to bother and harass the victim. After petitioner got married, he did not bother the victim from 2001 to 2003.

In May 2004, petitioner helped the victim purchase a car and furniture. They also took several trips together. The victim testified that she and petitioner never had a sexual relationship. However, after awhile, petitioner began calling the victim constantly at work and home, and would also call her friends and family. Petitioner also began following the victim at home, bars, and restaurants. The victim never gave petitioner keys to her apartment but testified that in August 2004, she woke up and found petitioner in bed with her. Petitioner did not have any pants on, and she was no longer wearing any underwear. In January 2005, the victim again awoke to find

petitioner in her bed. Both times, petitioner explained that he had raped her because he wanted to get her pregnant. After the second incident, the victim noticed a white residue in the bottom of her water glass. Petitioner said he had put sleeping pills in her water to effectuate both rapes.

In 2004, the victim began dating David Orr. On several occasions, petitioner would come to the victim's apartment and pound on the door until Orr would chase him away. In January or February 2005, Orr helped the victim move to another apartment so petitioner would not find her. However, petitioner discovered the new address and resumed the harassment. Petitioner loosened the lug nuts on the victim's car in an attempt to injure Orr. Petitioner also left a hand written note on the victim's car explaining that he had a right to vandalize her car. On June 14, 2005, petitioner entered the victim's apartment and took her purse and Orr's wallet. On June 15, 2005, police arrested petitioner when they found him near the victim's apartment. Petitioner was charged with three counts of first-degree home invasion and two counts of third-degree criminal sexual conduct. Petitioner was tried before a jury beginning February 28, 2006, and concluding on March 3, 2006.

At the conclusion of trial, on March 3, 2006, the jury found petitioner guilty of one count of first-degree home invasion and one count of third-degree criminal sexual conduct. (Docket # 9-10) On May 11, 2006, petitioner was sentenced to concurrent terms of fifty-one months to fifteen years with respect to the charge of third-degree criminal sexual conduct and fifty-one months to twenty years with respect to the charge of first-degree home invasion. (Sentencing Transcript, (S. Tr.II), 11, docket #9-11.)

Petitioner appealed as of right to the Michigan Court of Appeals, asserting his first, second, fourth and part of his third claims for habeas corpus relief. (See Def.-Appellant's Br. on Appeal, docket #9-13.) However, petitioner did not assert his third habeas claim which alleges that

his trial counsel was ineffective for failing to object to the amendment of the charge from larceny to home invasion in the district court. By unpublished opinion issued on October 30, 2007, the Michigan Court of Appeals rejected all appellate arguments and affirmed petitioner's convictions and sentences. (See10/30/07Mich. Ct. App. Opinion ("MCOA Op."), docket #9-13.)

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court, raising the same claims that had been rejected by the Michigan Court of Appeals. By order entered February 19, 2008, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed. (See Mich. Ord., docket #9-14.)

Petitioner returned to the trial court and filed a motion for relief from judgment. The motion raised three of the claims that had already been presented in his appeal of right. The trial court denied the motion in an order dated September 22, 2008. Petitioner has not appealed this order.

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied, Texas v. Penry*, 126 S. Ct. 2862 (June 12, 2006). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (Oct. 9, 2007). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing

*Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*. *Onifer*, 255 F.3d at 316. The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harris*, 212 F.3d at 943. However, the Sixth Circuit recently has clarified that where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts *de novo* review. *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

As noted above, petitioner asserts in his first claim that the improper admission of evidence that he loosened the lug nuts on the wheels of the victim's vehicle violated M.R.E. 404(b) and denied him due process. However, a federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, law or treaties of the United States. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000). Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. The admission of this prior bad acts evidence against petitioner at his state trial does not entitle him to habeas relief because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Accordingly, petitioner is not entitled to habeas corpus relief with respect to his first claim.

In his second claim, petitioner asserts that the prosecutor committed misconduct by asserting that petitioner raped his ex-wife, and that the trial court erred in failing to allow his ex-wife to testify at trial. In addressing this claim the Michigan Court of Appeals held:

> [petitioner] failed to preserve this issue regarding the testimony at trial because he did not object to the prosecutor's questioning, thereby depriving the trial court the opportunity to cure the error.

*People v. Filipiak,* Michigan Court of Appeals No. 271162 (Oct. 30, 2007)(unpublished).

Review of petitioner's second claim is barred by his failure to preserve it at the trial court. "[P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith,* 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986)). All three elements of procedural default are satisfied in this case. Petitioner failed to comply with a state procedural rule that requires defendants in criminal cases to present their claims to the trial court before raising them on appeal. See *People v. Carines,* 460 Mich. 750, 761-64 (1999) (unpreserved constitutional error); *People v. Grant,* 445 Mich. 535, 546 (1994) (unpreserved non-constitutional error). The last state court to issue a reasoned opinion on his claim was the Michigan Court of Appeals, which denied relief because petitioner failed to preserve the claim in the trial court, and the contemporaneous-objection rule is an adequate and independent state ground for the state court's decision because the rule was "firmly established and regularly followed" before

petitioner's trial. *Rogers v. Howes,* 144 F.3d 990, 992 (6th Cir. 1998) (quoting *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991)).

Because the elements of procedural default have been satisfied, petitioner must show "cause" for failing to request a curative jury instruction during trial and "actual prejudice" as a result of the alleged violation of federal law. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Alternatively, petitioner must demonstrate that a fundamental miscarriage of justice will occur as a result of the Court's failure to consider the substantive merits of his claim. *Id.*

Constitutionally ineffective assistance of counsel is "cause" for a procedural default, but "[a]ttorney error short of ineffective assistance of counsel...does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant,* 499 U.S. 467, 494 (1991) (citing *Murray v. Carrier,* 477 U.S. 478, 486-88 (1986)). In order to show that his attorney was constitutionally ineffective, petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

Petitioner asserts that his counsel was ineffective in failing to object to the alleged prosecutorial misconduct when he cross-examined petitioner regarding conversations he had with the victim over the telephone. Petitioner asserts that the prosecutor's questions impermissibly admitted evidence that had previously been ruled inadmissable by the trial court. It is true that the trial court declined to permit the prosecution to present the testimony of petitioner's ex-wife, however, the prosecution did not present this testimony. It was defense counsel in its opening statement that indicated that he wanted the jury to hear the audiotape because it was not an admission or a confession. The defense asserted that the tape simply demonstrated petitioner telling the victim what she wanted to hear. (Transcript Volume II, 31, docket # 9-8).

During direct examination of petitioner by his counsel, several passages from the audiotape were played by the defense for petitioner to explain. The prosecution, on cross examination, attacked the premise that petitioner made the comments on the tape to appease the victim and continue the conversation. Respondent asserts that the purpose of the cross examination was to demonstrate to the jury that petitioner's theory of capitulation was simply an attempt to make the theory fit the facts. Examined in context, the prosecutor was challenging petitioner's claims that he was only appeasing the victim to prolong the conversation. There was no evidence presented at trial that petitioner had previously raped his ex-wife. The cross examination was a proper inquiry into petitioner's credibility that explored weaknesses in petitioner's version of the events.

Therefore, because there was no misconduct by the prosecutor in this line of questioning, trial counsel was not deficient for failing to object. The presentation of the audiotape was a part of his reasonable defense strategy. Petitioner's trial attorney challenged the credibility and effectively cross examined the victim and raised a reasonable doubt in the mind of the jurors to three of the five charges that petitioner was facing. The audiotape was used to expand on his theory that petitioner was in love with the victim and wanted to do whatever necessary to continue a long running love affair. Having used the tape in his direct examination of petitioner, trial counsel could not then attempt to limit the jury's exposure to the tape. This would have only served to downplay his theory about petitioner telling the victim what she wanted to hear. A particular strategy does not constitute ineffective assistance of counsel simply because it does not work. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *West v. Seabold*, 73 F.3d 81,84 (6th Cir. 1996)(quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*,

113 S. Ct. 2969 (1993)). Therefore, ineffective assistance of counsel cannot be deemed "cause" for petitioner's procedural default.

In his third claim, petitioner asserts that he was denied the effective assistance of trial counsel where his counsel: (a) failed to adequately challenge the prosecutor's assertion that petitioner raped his ex-wife; and (b) failed to challenge the amendment to the information increasing one charge from larceny to first-degree home invasion.

As noted above, petitioner's claim that his counsel improperly failed to object to the prosecutor's assertion that he had raped his ex-wife lacks merit because there was no prosecutorial misconduct.

The latter part of petitioner's third claim, regarding the charge being increased from larceny to first-degree home invasion, was not presented to the State courts in either petitioner's direct appeal or in his motion for relief from judgement. Petitioner's failure to present this claim in either of the proceedings deprived the State of an opportunity to address his claims, and as a result the claims are barred from review in this action.

Petitioner must exhaust remedies available in the state courts before obtaining review of their habeas claims. Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. See *O'Sullivan,* 526 U.S. at 842; *Picard v. Connor,* 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry,* 513 U.S. 364, 365 (1995) and *Anderson v. Harless,* 459 U.S. 4, 19 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan,* 513 U.S. at 365-66; *Silverburg v. Evitts,* 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders,* 902

F.2d 480, 483 (6th Cir. 1990). The doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court. See *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987). Because petitioner did not present his claims based on the same legal theory in the State appellate courts, his claims are unexhausted.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). "If the claims presented in the federal court were never actually presented in the state courts, but a state procedural rule now prohibits the state court from considering them, the claims are considered exhausted, but are procedurally barred." *Cone v. Bell*, 243 F.3d 961, 967 (6th Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991). Under Michigan law, a petitioner may file only one motion for relief from judgment per conviction. See M.C.R. 6.502(G)(1). Because petitioner has already filed a motion for relief from judgment, he no longer has an available state court remedy. Consequently, his claim is procedurally barred.

A court may reach the merits of procedurally defaulted claims if the petitioner is able to establish cause and prejudice or a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478 (1986). To demonstrate cause for a procedural default, a petitioner must

> ...show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule...[These factors include] a showing that the factual or legal basis for a claim was not reasonably available to counsel...or that some interference by officials'...made compliance impracticable.

*Murray*, 477 U.S. at 488.

Petitioner cannot establish cause because he has not shown the existence of an external factor that impeded him from raising his claims in his motion for relief from judgement.[1] A petitioner's *pro se* status and ignorance of his rights do not constitute cause for failure to raise his constitutional claims in the state courts. *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995). The decision not to pursue his claims in his motion for relief from judgment is attributable to petitioner alone.

Moreover, to show prejudice, a petitioner must show that the whole trial was infected with error of constitutional magnitude due to the errors working to his actual and substantial disadvantage. *United States v. Frady*, 456 U.S. 152, 170 (1982). Petitioner cannot establish prejudice because there is strong evidence of petitioner's guilt and a lack of evidence to support his claims. *Rust*, 17, F.3d at 161-162.

Nor can petitioner establish that failure to review his procedurally defaulted claims will result in a fundamental miscarriage of justice. The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of the one who is actually innocent of the underlying offense. *Dretke v. Haley* 541 U.S. 386, 388 (2004); *Carrier* 477 U.S. at 496. A claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner has not presented any new evidence in support of a claim of actual innocence; therefore, a miscarriage of justice will not occur

---

[1] Even if petitioner had raised this claim in his motion for relief from judgment, he failed to appeal the denial of that motion to the Michigan Court of Appeals and the Michigan Supreme Court. Therefore, this claim would still not have been exhausted.

as a result of the Court's failure to consider the substantive merits of petitioner's claim about the lack of curative jury instruction. The court concludes that petitioner's claims are procedurally defaulted.

In his fourth claim, petitioner asserts that he was denied fair notice where the prosecutor was allowed, after the close of proofs, to increase the time-frame in which the criminal sexual conduct occurred by one month. In addressing this claim, the Michigan Court of Appeals held:

> [t]here is no indication that defense counsel would have questioned the victim differently based on this amendment. All the testimony about the date of this incident was approximate, and amending the information to reflect approximate dates did not unfairly surprise or prejudice defendant.

*People v. Filipiak* Michigan Court of Appeals No. 271162 (Oct. 30, 2007)(unpublished). The Court of Appeals rejected the claim on the merits, noting that because petitioner's defense was consent, a lack of specificity as to the time of the assault did not prejudice his defense.

The Sixth Amendment provides that a criminal defendant has the right to "be informed of the nature and cause of the accusation" against him. Notice and an opportunity to defend against the charges as guaranteed by the Sixth Amendment are an integral part of due process protected by the Fourteenth Amendment. The complaint or indictment challenged need not be perfect under state law so long as it adequately informs the petitioner of the crime in sufficient detail so as to enable him to prepare a defense. Thus, "[a]n indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue congnizable in habeas proceedings." *Mira v. Marshall,* 806 F.2d 636, 639 (6th Cir. 1986); see also, *United States v. Buckley,* 689 F.2d 893, 899 (9th Cir. 1982); *Ransom v. Davis,* 613 F. Supp 430, 431 (M.D. Tenn 1984), aff'd, 767 F.2d 921 (6th Cir. 1985). "[A] charge is sufficiently specific when it contains the elements of the crime, permits the accused to plead and prepare a defense, and allows the disposition to be used as a

bar in a subsequent prosecution." *Fawcett v. Bablitch,* 962 F.2d 617, 618 (7th Cir. 1992). Because the defense theory was that the sex was consensual, it was reasonable for the amendment to be allowed. Petitioner was not hampered in his ability "to plead and prepare a defense." Habeas relief is not warranted under §2254(d).

For the foregoing reasons, petitioner's habeas corpus petition will be denied.


Dated:     1/19/2011                       /s/ R. Allan Edgar
                                                         R. Allan Edgar
                                                         United States District Judge